UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN MARQUES**,<br>Plaintiff,<br>v.<br>**WELLS FARGO BANK, N.A., ET AL.**,<br>Defendants. | Case No. 16-cv-03973-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 20, 23 |

Plaintiff brings this action alleging that defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] has committed wrongful acts and omissions "during loan servicing, loan modification, and foreclosure process[es]" relating to plaintiff's primary residence. (Dkt. No. 17, "FAC.") Plaintiff raises the following causes of action against Wells Fargo: (i) wrongful foreclosure pursuant to California Civil Code § 2923.6; (ii) failure to provide a single point of contact ("SPOC") in foreclosure proceedings pursuant to California Civil Code § 2923.7; (iii) failure to engage in loss mitigation pursuant to California Civil Code § 2924.10; (iv) negligence in loan servicing; (v) violation of the Unfair Competition Law ("UCL"), California Business & Professional Code §§ 17200 *et seq.*; (vi) quiet title pursuant to California Code of Civil Procedure § 760.020; and (vii) declaratory relief pursuant to California Code of Civil Procedure § 1060.

---

[1] On September 13, 2016, plaintiff John Marques and defendant NDeX West, LLC filed a stipulation to grant defendant NDeX West, LLC Non-Monetary Status (Dkt. No. 23), presumably in reliance on California Civil Code section 2924*l*. No party has filed any objections within the fifteen day objection period provided by the statute. *See* Cal. Civ. Code § 2924*l*. Accordingly, the Court **GRANTS** the stipulation. NDeX West, LLC will hereafter be deemed a nominal defendant unless otherwise ordered, and shall be bound to the extent set out in the parties' stipulation. *See Hobbs v. Wells Fargo Bank N.A.*, No. 12-CV-04060-RS, 2014 WL 573496, at *2 n.3 (N.D. Cal. Feb. 12, 2014).

Defendant Wells Fargo has moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 20.)[2] Having carefully considered the pleadings and the papers submitted on this motion, and for the reasons set forth below, the Court **GRANTS IN PART** Wells Fargo's motion to dismiss as follows:  Counts Four and Six are **DISMISSED WITH PREJUDICE** and Counts Two and Five are **DISMISSED WITHOUT PREJUDICE**. The Court **DENIES** Wells Fargo's motion to dismiss as to Counts One, Three, and Seven.

### I. FACTUAL ALLEGATIONS AND SUMMARY OF JUDICIALLY NOTICED FACTS

Plaintiff's claims against Wells Fargo relate to foreclosure and loan modification proceedings on plaintiff's primary property located at 34 Westbrook Court, Clayton, California 94517 (the "Subject Property"). (FAC ¶ 3.)

On December 4, 2006, plaintiff executed a Deed of Trust to borrow a principal amount of $688,000.00 for the purchase of the Subject Property from World Savings Bank, FSB—subsequently acquired by Wells Fargo, which is the current servicer of plaintiff's loan. (*Id.* at ¶ 14 & Ex. A; RJN Exs. C, D, E, F, G.)  In June 2009, plaintiff and Wells Fargo's predecessor entered into a loan modification reducing the amount of the loan, fixing the interest rate, and extending the term of the loan. (RJN Ex. H.)

---

[2] In connection with its motion to dismiss, Wells Fargo has filed a request for judicial notice of the following exhibits:  (1) Exhibit A, Adjustable Rate Mortgage Note, dated November 29, 2006; (2) Exhibit B, Deed of Trust, dated November 29, 2006; (3) Exhibit C, Certificate of Corporate Existence, dated April 21, 2006; (4) Exhibit D, Letter from the Department of Treasury, dated November 19, 2007; (5) Exhibit E, Charter of Wachovia Mortgage; (6) Exhibit F, Official Certification of Wachovia and Wells Fargo merger; (7) Exhibit G, Federal Deposit Insurance Corporation website pages; (8) Exhibit H, Loan Modification Agreement between plaintiff and Wells Fargo, dated June 18, 2009; (9) Exhibit I, Notice of Default, dated July 14, 2010; and (10) Exhibit J, Notice of Trustee's Sale, dated August 7, 2015. (Dkt. No. 21, "RJN.")  Plaintiff has not opposed Wells Fargo's request. "Generally, a district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). However, a court may take judicial notice of matters of public records and documents whose authenticity is not contested and upon which the plaintiff's complaint relies. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Santa Clara*, 307 F.2d 1119, 1125 (9th Cir. 2002). The Court **GRANTS** Wells Fargo's request for judicial notice of the exhibits attached to its RJN. The Court takes judicial notice of Exhibits B, C, D, E, F, G, I, and J as publicly available records or official acts of the government. The Court takes judicial notice of Exhibits A and H as documents referred to or relied upon as the basis of plaintiff's claims and whose authenticity is not believed to be in question.

After plaintiff's loan modification in June 2009, plaintiff "began falling behind on his monthly loan payments." (FAC ¶ 14.) On July 15, 2010, Wells Fargo recorded a Notice of Default and Election to Sell Under Deed of Trust. (*Id.* ¶ 15; RJN Ex. I.) Plaintiff then alleges that on October 18, 2010, NDeX recorded a Notice of Trustee's Sale. (FAC ¶ 16.) The record contains no factual allegations of what transpired between the parties over the course of the next five years.

According to the FAC, eventually, on August 7, 2015, Wells Fargo recorded another Notice of Trustee's Sale setting a foreclosure sale date of September 10, 2015. (FAC ¶ 17 and Ex. C.)[3] In response to receiving this notice, plaintiff alleges that he submitted an application for a loan modification to Wells Fargo in August 2015, indicating that his monthly gross income was $17,008.00. (FAC ¶ 20.) Plaintiff claims that that application was denied in October 2015 on the grounds of "'affordability.'" (*Id.*) Plaintiff subsequently submitted an appeal of this decision in November 2015. (*Id.*)

After retaining new counsel in December 2015, plaintiff alleges that he submitted another complete application for loan modification to Wells Fargo, showing a "decreased gross monthly income of $15,769.00." (*Id.* at ¶ 22.) Plaintiff claims that "Wells Fargo summarily dismissed the submission stating that it would consider it 'evidence in support of an appeal' and purportedly denied said appeal on December 21, 2015." (*Id.* at ¶ 23.)

On May 6, 2016, plaintiff alleges that he submitted another loan modification application "evidencing a material change in [p]laintiff's financial circumstances with a significant decrease in monthly income of $8,491.99." (*Id.* at ¶ 27.) On the same day, plaintiff claims that his counsel spoke with a Wells Fargo representative who requested additional documentation, which plaintiff subsequently provided. (*Id.* at ¶ 28.) Over the course of the following week, plaintiff claims he spoke with two Wells Fargo representatives, who informed plaintiff that Wells Fargo was in

---

[3] Plaintiff alleges that the sale was initially set to take place on May 16, 2016. The Notice attached as Exhibit C, however, set the sale date as September 10, 2015. Based on the allegations in the FAC, it appears that the dates for the trustee's sale were postponed to May 16, 2016, then to June 22, 2016, then to August 4, 2016, and then finally to September 8, 2016.

3

possession of all necessary documents to complete its review of plaintiff's application. (*Id.* at ¶¶ 29–30.)

Plaintiff claims that he again retained new counsel in May 2016. (*Id.* at ¶ 32.) Plaintiff's new counsel allegedly contacted Wells Fargo on May 24, 2016 and was informed by a Wells Fargo representative that Wells Fargo needed additional documents to complete its review, which plaintiff claims he immediately provided. (*Id.*) On June 15, 2016, Wells Fargo allegedly confirmed that it was in possession of all the documents necessary to complete its review and that it would postpone the sale date to August 4, 2016. (*Id.* at ¶ 33.)

On June 16, 2016, the FAC alleges that Wells Fargo sent a letter to plaintiff denying his loan modification application. (*Id.* at ¶ 34.) Plaintiff claims that Wells Fargo denied his application based upon a finding that plaintiff's gross monthly income was $21,777.00, contrary to plaintiff's application which he alleges showed an income of $8491.99. (*Id.*) On July 17, 2016, plaintiff claims that he submitted an appeal of Wells Fargo's denial. (*Id.* at ¶ 35.) Subsequent to this appeal, Wells Fargo postponed the sale date from August 4, 2016 to September 8, 2016. (*Id.* at ¶ 36.) To date, no foreclosure sale has been recorded.

## II.  LEGAL STANDARD

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations

4

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

### III.   DISCUSSION

Wells Fargo moves to dismiss each of plaintiff's causes of action. The Court address each below.

#### A.   Count One:   Wrongful Foreclosure Pursuant to Cal. Civ. Code § 2923.6

Plaintiff's first cause of action stems from an alleged violation of California Civil Code § 2923.6 on the grounds that Wells Fargo continued foreclosure proceedings even after plaintiff had submitted loan modification applications. Section 2923.6 limits the ability of a lender to issue a notice of default or a notice of sale, or conduct a trustee's sale on a "first lien loan modification" until one of three conditions occur: (1) the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period has expired; (2) the borrower does not accept an offered first lien loan modification within fourteen days of the offer; or (3) the borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification. Cal. Civ. Code § 2923.6(c).

Wells Fargo's primary argument focuses on Section 2923.6(c)(3). Wells Fargo argues that plaintiff has lost his statutory rights because in 2009, Wells Fargo's predecessor already approved

5

a loan modification for plaintiff, and plaintiff subsequently defaulted. *See Duran v. World Sav. Bank, FSB*, No. 16-CV-01938-SJO, 2016 U.S. Dist. LEXIS 67280, at *8 (C.D. Cal. Apr. 29, 2016) (finding that plaintiffs' claims under section 2923.6 were precluded because plaintiffs had previously received a loan modification) (citing *Deschain v. IndyMac Mortg. Servs.*, 617 F. App'x 690, 693–94 (9th Cir. 2015), *petition for cert. filed* (No. 15-6840); Cal. Civ. Code § 2923.6(c)(3) (stating that a lender can proceed with a sale if a "borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification").

Plaintiff does not contest that he received a prior loan modification, or that he defaulted on that modified loan. (*See* RJN Exhibits H, I.) Instead, plaintiff argues that under Section 2923.6(g), Wells Fargo is obligated to review subsequent applications where there has been a material change in the borrower's financial circumstances. Cal. Civ. Code § 2923.6(g) (providing that lenders are not obligated to review multiple applications for loan modifications if borrower had been afforded a fair opportunity to be evaluated prior to January 1, 2013 "unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application").

Wells Fargo, in turn, argues that Section 2923.6(g) does not obligate it to review subsequent loan modification applications where a previous modification had been approved. Wells Fargo contends that Section 2923.6(g) applies only to situations where there was only a "mere prior 'opportunity' for a loan modification" but not in situations where a loan modification was actually provided to the borrower. (Dkt. No. 24 at 2.) The Court disagrees. As several courts have found, the "plain language of the statute applies to all prior loan modifications, whether they were successful or unsuccessful" where the previous modification occurred prior to January 1, 2013. *Shaw v. Specialized Loan Servicing*, No. 14-CV-00783-MMM, 2014 WL 3362359, at *6 (C.D. Cal. July 9, 2014) (finding that Section 2923.6(g) applied even where a prior modification had been approved); *see also Dias v. J.P. Morgan Chase, N.A.*, No. 13-CV-05327-EJD, 2014 WL 2890255, at *3 (N.D. Cal. June 25, 2014) (same); *Ivey v. Chase Bank*, No. 14-CV-02289-NC, 2015 WL 294371, at *3 (N.D. Cal. Jan. 22, 2015) (same).

6

1    Here, plaintiff obtained a loan modification from Wells Fargo in 2009 (RJN Exhibit H),
2    and subsequently defaulted (RJN Exhibit I).  In 2015, Wells Fargo filed a Notice of Trustee's sale,
3    and plaintiff subsequently filed an application for a first lien loan modification.  Since then,
4    plaintiff alleges that he has submitted multiple rounds of loan modification applications, which he
5    claims show a material change in his financial condition.

6    Next, Wells Fargo argues that even if it was obligated to review plaintiff's loan
7    modification applications, plaintiff failed to plead sufficient facts to sustain his claims.
8    Specifically, Wells Fargo contends that plaintiff failed to attach any of his correspondences with
9    Wells Fargo or to identify any specific documents requested and submitted for application.
10   However, Wells Fargo cites no authority in support of its position that plaintiff must attach or
11   identify such documents at the pleading stage.  The one case Wells Fargo cites purportedly for this
12   proposition offers no such support.  *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d
13   1110, 1151 (N.D. Cal. 2013) (dismissing claims because plaintiffs failed to allege any change in
14   financial conditions, not because they failed to attach or identify specific documents).[4]

15   Wells Fargo further argues that plaintiff must show that an alleged violation of foreclosure
16   law caused prejudice, and that plaintiff failed to plead any facts to that effect.  Again, the
17   authorities Wells Fargo cites do not support dismissing plaintiff's Section 2923.6 claims on this
18   ground.  *See Knapp v. Doherty*, 123 Cal. App. 4th 76, 93–94 (2004) (summary judgment finding
19   that deficient notice of sale had no impact on ultimate sale price); *Lawther v. OneWest Bank*, No.
20   10-CV-0054-RS, 2010 U.S. Dist. LEXIS 131090, at *15 (N.D. Cal. Nov. 30, 2010) (finding that in
21   a negligence per se claim based on a deficient notice of sale pursuant to section 2924, plaintiff
22   must plead that the deficiency caused plaintiff some form of prejudice); *Reynoso v. Paul Fin. LLC*,
23   No. 09-CV-3225-SC, 2009 U.S. Dist. LEXIS 106555, at *13 (N.D. Cal. Nov. 16, 2009) (finding
24   that plaintiff must plead that irregularities in the trustee sale caused the harm, where claim under
25   section 2924 was based on plaintiff's claim that the beneficiary was not named in the Notice of

---

[4] Wells Fargo also cites two California state cases, which state that statutory claims must be pled with particularity.  However, this is not the pleading standard in federal courts, and Wells Fargo points to no authority to the contrary.

7

1  Trustee's sale). Here, the harm, as defined in the statute, is the recording of a Notice of Default or
2  a Notice of Sale during the pendency of a loan modification application, which plaintiff
3  sufficiently alleged.

4  Thus, the Court finds that plaintiff's allegations with respect to his loan modification
5  applications and Wells Fargo's recording of a Notice of Sale are sufficient to state a claim under
6  Section 2923.6. The Court, therefore, **DENIES** Wells Fargo's motion to dismiss Count One.

### B.   Count Two: Wrongful Foreclosure Pursuant to Cal. Civ. Code § 2923.7

Plaintiff's second cause of action is for a violation of California Civil Code § 2923.7, which provides that, upon request from a borrower seeking to prevent foreclosure, the mortgage servicer shall establish an SPOC responsible for communicating with the borrower, coordinating receipt of documents associated with foreclosure prevention alternatives, informing the borrower of the current status of his applications, ensuring that a borrower is considered for all foreclosure prevention alternatives, and accessing individuals with the authority to stop foreclosure when necessary. Cal. Civ. Code § 2923.7(a), (b). The statute defines an SPOC as an "individual or team of personnel each of whom has the ability to perform" such responsibilities. *Id.* at § 2923.7(e).

Wells Fargo seeks to dismiss plaintiff's claims under Section 2923.7 on the grounds that the FAC is contradictory, or at best unclear, regarding plaintiff's communications with Wells Fargo's representatives. Wells Fargo also argues that the FAC inconsistently alleges that plaintiff's SPOCs lacked authority to postpone the foreclosure sales, while also acknowledging that Wells Fargo in fact postponed the foreclosure sale dates from June 2016 to August 2016 and then again to September 2016.[5]

The Court agrees that further clarity on plaintiff's communications with the SPOCs would be beneficial at this stage to determine what, if any, of the alleged actions or omissions by the SPOCs were in violation of Section 2923.7.

---

[5] Wells Fargo also argues that to the extent plaintiff contends that Wells Fargo is in violation of Section 2923.7 because plaintiff has interacted with several different representatives, the statute specifically allows for a "team" to serve as the SPOC. Plaintiff does not respond to this argument in his opposition and appears to concede that such a practice does not violate Section 2923.7.

Accordingly, the Court **GRANTS** Wells Fargo's motion to dismiss Count Two, with leave to amend.

### C. Count Three: Failure to Provide Written Acknowledgement Pursuant to Cal. Civ. Code § 2924.10

Plaintiff's third cause of action is for a violation of California Civil Code § 2924.10. Pursuant to this section, a loan servicer must provide a borrower written acknowledgement of a loan modification application within five business days. Such acknowledgment must include: (1) descriptions of the loan modification process; (2) deadlines to submit documentation; (3) expiration dates for submitted documents; and (4) any deficiency in the borrower's application. Cal. Civ. Code § 2924.10(a)(1)–(4).

Wells Fargo largely adopts its arguments for dismissing Counts One and Two in its motion to dismiss plaintiff's claims under Section 2924.10. The Court finds such arguments unpersuasive for the same reasons discussed in Count One.[6] Accordingly, the Court **DENIES** Wells Fargo's motion to dismiss Count Three.

### D. Count Four: Negligence in Loan Servicing

To state a claim for negligence, a plaintiff must allege: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's damages or injuries. *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 944 (2014) (citing *Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal. App. 4th 49, 62 (2013)).

The parties' central dispute as to this claim is whether Wells Fargo, as the mortgage servicer, owes plaintiff a duty of care. As a general rule in California, a "financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 945 (citing *Nymark v.*

---

[6] Wells Fargo also argues that plaintiff did not allege supporting facts indicating that he actually transmitted loan modification applications to Wells Fargo. Such argument, however, appears to ignore plaintiff's specific allegations that he submitted applications in August 2015, on December 11, 2015, and on May 6, 2016, and that he received facsimile confirmation that the documents were transmitted. (FAC ¶ 70.) At the motion to dismiss stage, a court must assume that the allegations in the complaint are true. *See Twombly*, 550 U.S. at 589.

9

*Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–96 (1991)).

California courts, and federal courts interpreting California law, are "divided as to whether a lender owes a duty of care during a loan modification application process." *Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1116 (E.D. Cal. 2015) (comparing *Lueras* (finding no duty) with *Alvarez* (finding duty of care exists when lender agrees to consider loan modification application)). Wells Fargo contends that the Court should follow the opinion in *Lueras*, where the California Court of Appeal held that a lender did not owe a borrower a duty of care in offering, considering, or approving a loan modification application. *Lueras*, 221 Cal. App. 4th at 67. The Court of Appeal explained that a "loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Id*. Plaintiff, on the other hand, argues that the Court should follow the Court of Appeal's decision in *Alvarez* in which another California appellate court held that lenders did owe borrowers a duty of care where the lender "agreed to consider modification of the plaintiff's loans." *Alvarez*, 228 Cal. App. 4th at 948.

A growing number of courts that have addressed this issue since *Lueras* and *Alvarez* have adopted the holding in *Lueras* in finding that a mortgage servicer does not owe borrowers a duty of care in processing a residential loan modification. *See Ahmadi v. Nationstar Mortg., LLC*, No. 16-CV-0062-AG, 2016 U.S. Dist. LEXIS 45904, at *15 (C.D. Cal. Mar. 31, 2016) (stating that a growing number of courts are adopting *Lueras* in finding no duty of care); *see also Griffin v. Green Tree Servicing, LLC*, No. 14-CV-9408-MMM, 2015 WL 10059081, at *14 (C.D. Cal. Oct. 1, 2015) (discussing the split in authority and finding no duty of care); *Guillermo v. Caliber Home Loans, Inc.*, No. 14-CV-4212-JSW, 2015 WL 1306851, at *7 (N.D. Cal. Mar. 23, 2015) (finding no duty of care ). Such courts have explained that "there is no principled way to distinguish the process of applying for an original loan from the process of applying for a loan modification," noting that both "involve activities clearly within the conventional role of mere lenders of money." *Griffin*, 2015 WL 10059081, at *14; *see also Carbajal v. Wells Fargo Bank, N.A.*, No. 14-CV-7851-PSG, 2015 WL 2454054, at *6 (C.D. Cal. Apr. 10, 2015); *Garcia v. PNC Mortg.*, No. 14-CV-3543-PJH, 2015 WL 5461563, at *3 (N.D. Cal. Sept. 16, 2015) (agreeing with *Lueras* in

finding that loan modifications fall under the "provision of ordinary financial services").[7]

The Court agrees and finds the reasoning in *Lueras* more persuasive in finding that mortgage servicers do not owe borrowers a duty of care in the processing of loan modification applications. Such activities, as other courts have found, are indistinguishable from the process of providing an original loan, and therefore, fall within the lender's "conventional role as a lender of money." *See Griffin*, 2015 WL 10059081, at *14; *see also Carbajal*, 2015 WL 2454054, at *6; *Garcia*, 2015 WL 5461563, at *3.

Accordingly, the Court **GRANTS** Wells Fargo's motion to dismiss Count Four. Because plaintiff could not amend the complaint to cure the deficiency as to this count, the dismissal is made with prejudice and without leave to amend.

### E. Count Five: Violation of the UCL

Plaintiff also brings claims under the UCL, which prohibits "any unlawful, unfair, or

---

[7] The courts that have followed *Alvarez* have adopted its analysis of the "*Biakanja*" factors in finding that a duty exists. *See, e.g.*, *Miller v. Wells Fargo Bank, N.A.*, No. 14-CV-3392-DDP, 2015 WL 5074466, at *6–7 (C.D. Cal. Aug. 27, 2015); *Romo v. Wells Fargo Bank, N.A.*, No. 15-CV-3708-EMC, 2016 WL 324286, at *9 (N.D. Cal. Jan. 27, 2016). In *Biakanja v. Irving*, the California Supreme Court applied a multi-factor test to determine whether a defendant should be "held liable to a third person" with whom it was not in privity. Such factors include: (i) the extent to which the transaction was intended to affect the plaintiff; (ii) the foreseeability of harm to him; (iii) the degree of certainty that the plaintiff suffered injury; (iv) the closeness of the connection between the defendant's conduct and the injury suffered; (v) the moral blame attached to the defendant's conduct; and (vi) the policy of preventing future harm. *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). The California Court of Appeal in *Alvarez* held that these factors weighed in favor of finding a duty, explaining: (i) the transaction was intended to benefit plaintiffs; (ii) it was foreseeable that a mishandling of the documents could result in harm; (iii) plaintiffs did suffer harm because plaintiffs lost their home; (iv) the mishandling of documents deprived plaintiffs of the possibility of obtaining the requested relief; (v) defendants are worthy of blame because plaintiffs have no ability to protect their interests in the loan modification process; and (vi) public policy favors preventing such harm in the future. *Alvarez*, 228 Cal. App. 4th at 948–49. The *Lueras* court held to the contrary finding that the *Biakanja* factors did not support the imposition of a common law duty. *Lueras*, 221 Cal. App. 4th at 67. Particularly, *Lueras* explained that if the "modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for loan modification, then no moral blame would be attached to the lender's conduct." *Id.* (holding that a loan modification falls "squarely within the scope of a lending institution's conventional role as a lender of money"); *see also Carbajal*, 2015 WL 2454054, at *6 (finding that the *Biakanja* factors do not support the imposition of a duty because the harm results from the borrower's inability to make the loan payments); *cf. Garcia*, 2015 WL 5461563, at *3 (finding *Lueras*' reasoning more persuasive than that of *Alvarez*).

11

fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  A plaintiff may allege either an unlawful, an unfair, or a fraudulent act to establish liability under the UCL.  *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  To state a claim under the unlawful prong of the UCL, plaintiff may allege the commission of any act "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Sup. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994).  With respect to the unfair prong, an act or practice is unfair if the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See Lueras*, 221 Cal. App. 4th at 81.  With respect to the fraudulent prong, the UCL requires "only a showing that members of the public are likely to be deceived" by the allegedly fraudulent practice. *Id.*  Additionally, to sustain a claim under the fraudulent prong of the UCL, plaintiffs must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Hutson v. Am. Home Mortg. Servicing, Inc.*, No. 09-CV-1951-PJH, 2009 WL 3353312, at *16 (N.D. Cal. Oct. 16, 2009).

As an initial matter, Wells Fargo challenges plaintiff's standing to sue under the UCL, arguing that plaintiff has failed to allege that he suffered an actual loss due to Wells Fargo's alleged conduct, as required by the statute, because no foreclosure has yet taken place.  Standing under the UCL requires that plaintiff has suffered "an injury in fact and lost money or property as a result of" the alleged unlawful, unfair, or fraudulent conduct. *See DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-1390-LHK, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011).  Here, plaintiff's only allegation of an injury cognizable under the UCL is that he "continues to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs in an amount to be proven at time of trial." (FAC ¶ 106.)  This is insufficient for standing under the UCL. *See Hosseini v. Wells Fargo Bank, N.A.*, No. 13-CV-02066-DMR, 2013 WL 4279632, at *8 (N.D. Cal. Aug. 9, 2013) (finding no standing under the UCL where no foreclosure sale had yet taken place, and plaintiff only included the conclusory allegation that they were injured as a result of defendant's practices); *cf. Peterson v. Wells Fargo Bank, N.A.*, No. 13-CV-3392-MEJ, 2014 WL 1911895, at *7 (N.D. Cal. May 13, 2014) (finding sufficient for standing under the UCL allegations that

plaintiff spent money improving the property in reliance on defendant's promise to modify the loan even where no foreclosure sale had taken place).

Accordingly, the Court **GRANTS WITHOUT PREJUDICE** Wells Fargo's motion to dismiss Count Five of the FAC with leave to amend.

### F.   Count Six: Quiet Total Pursuant to Cal. Code Civ. Proc. § 760.020

Plaintiff also brings an action to quiet his title under California Code of Civil Procedure § 760.020 to "establish title against adverse claims to real or personal property or any interest therein." Specifically, plaintiff seeks a judicial declaration that defendants "be declared to have no estate, right, title, or interest in the Subject Property, and that [d]efendants, and their agents, and assigns, be forever enjoined from asserting any estate, right, title or interest in the Subject Property." (FAC ¶ 113.)

It is well-settled in California that a "basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (finding it dispositive that plaintiff did not pay outstanding debt on the property and dismissing without leave to amend) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)); *see also Shimpones v. Stickney*, 219 Cal. 637, 649 (1934) ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.").[8] Here, plaintiff does not contend that he has fully paid the debt to the lender. Nor can he given the nature of the allegations.

Accordingly, the Court **GRANTS WITH PREJUDICE** Wells Fargo's motion to dismiss Count Six of the FAC.

### G.   Count Seven: Declaratory Relief Pursuant to Cal. Code Civ. Proc. § 1060

Plaintiff's final cause of action is for declaratory relief pursuant to California Code of Civil

---

[8] The cases cited by plaintiff are factually and legally distinguishable and therefore do not persuade. *See Storm v. Am.'s Servicing Co.*, No. 09-CV-1206-IEG, 2009 WL 3756629, at *6 and n.9 (S.D. Cal. Nov. 6, 2009) (finding allegations of tender not required where plaintiffs sought to quiet title establishing that they retained an interest in the parcels based on a partial reconveyance); *Onofrio v. Rice*, 55 Cal. App. 4th 413, 423–24 (1997) (finding tender not required where plaintiff sought rescission of the contract based on allegations of fraud).

13

Procedure § 1060, which provides that:

> Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights.

Wells Fargo argues that plaintiff's claim for declaratory relief fails because he has failed to set forth an ongoing and existing controversy between the parties. Wells Fargo's entire basis for dismissing this cause of action appears to be contingent on the Court's dismissal of plaintiff's other causes of action. For the reasons set forth above and because the Court finds that an ongoing controversy exists between the parties, the Court **DENIES** Wells Fargo's motion to dismiss Count Seven.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Wells Fargo's motion to dismiss as follows: Counts Four and Six are **DISMISSED WITH PREJUDICE** and Counts Two and Five are **DISMISSED WITHOUT PREJUDICE**. The Court **DENIES** Wells Fargo's motion to dismiss as to Counts One, Three, and Seven.

Plaintiff shall file a third amended complaint within fourteen (14) days of this Order and Wells Fargo shall file a responsive pleading fourteen (14) days thereafter.

This Order terminates Docket Numbers 20 and 23.

**IT IS SO ORDERED.**

Dated: October 13, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**